POPE MANUF'G CO. v. GORMULLY & JEFFREY MANUF'G CO. *et al.*
(No. 830.)

(*Circuit Court, N. D. Illinois.*   April 30, 1888.)

1. PATENTS FOR INVENTIONS—SCOPE OF CLAIM—BICYCLE SEATS.
    The first and second claims of letters patent No. 252,280, of January 10, 1882, to Curtiss H. Veeder, for a "seat for bicycles," are: "(1) A suspension saddle, constructed with a flexible portion, and having an under spring in two or more parts, to which the flexible portion is attached at either end, and which metallic parts are extensible."   (2) "In a velocipede seat, the combination of plates and clamps, stop and adjusting bolts."   The patent also contains a disclaimer limiting the claim solely to the "improved form of spring."   *Held*, in view of the disclaimer, that the patent must be restricted to the form of spring

shown; the principles of both suspension and extensibility, as applied to saddles, being old in the art, as evidenced by the English patent of Lamplugh and Brown of July, 1878, the Shire patent of May 26, 1879, and the Fowler patents of May, 1880, and October, 1881.

2. SAME—JOURNAL-BOXES.

The second claim of letters patent No. 197,289, of November 20, 1877, to A. L., G. M., and O. E. Peters, for an "anti-friction journal-box," is "the bearings with the shoulders beveled or notched, combined with the nut, or its equivalent, correspondingly beveled or notched." *Held*, in view of the prior state of the art, as evidenced by the English patent of 1853 to Chinnock, and the American patents of 1868 to Jewett and Leach, of 1870 to Alcott, and of 1872 to Ruse and Vernon, that the claim must be strictly confined to the devices shown, viz., a beveled nut for the adjustment of beveled rollers, and that it did not cover a lateral adjustment for ball-bearings by means of a nut.

3. SAME—VELOCIPEDE HANDLES.

In letters patent No. 245,542, of August 9, 1881, to Thomas W. Moran, for "handles for velocipedes," the improvement consists in affixing by the device shown a ball of rubber to the ends of the velocipede handles. *Held,* if not void for want of invention, restricted, in view of the prior state of the art, as evidenced by the English patent of July, 1877, to Harrison, to the specific device shown.

4. SAME—HANDLE-BARS.

The only feature covered by letters patent No. 310,776, of January 13, 1885, to William P Benham, for "improvements in velocipedes," is the idea of an undivided handle-bar, and the means by which the bar is fastened to the steering-head. *Held*, that the undivided handle-bar was a mere steering-bar without novelty; and that the patentable novelty, if any, was confined to the means by which the handle-bar was locked to the steering-head.

5. SAME—INFRINGEMENT.

The first and third claims of letters patent No. 310,776, of January 13, 1885, to William P. Benham, for "improvements in velocipedes," are (1) "the combination of an undivided bar, and an open slotted lug, and two sleeved nuts, or their equivalents, one on either side the lug, surrounding the bar and adapted to lock it rigidly to the lug." (3) "In combination with the handle-bar, the detent, constructed and adapted to operate substantially as and for the purpose set forth." *Held*, the undivided bar being void for want of novelty, the use of an undivided handle-bar fastened to the steering-head by a method making use of neither the open slotted lug and two-sleeved nuts, nor the detent, was not an infringement.

6. SAME—PATENTABILITY—INVENTION—PEDAL BARS.

The feature covered by the second and third claims of letters patent No. 323,162, of July 28, 1885, to Emmett G. Latta, for an "improvement in velocipedes," is the pedal-bar coated with rubber, longitudinally grooved, so as to furnish two bearing surfaces on opposite sides of the groove. *Held* void for want of novelty, a round grooved rubber-coated pedal-bar being old, as shown by the English patent of January, 1876, to Jackson, and the Harrison patent of 1877, and the change of form by Latta to a polygonal shaped bar involving no invention.

In Equity.   Bill for infringement.

Before GRESHAM, Circuit Judge, and BLODGETT, District Judge.

*Coburn & Thacher*, for complainant.

*B. F. Thurston* and *Offield & Towle*, for respondent.

BLODGETT, J.   The bill in this case charges the defendants with the infringement of the following patents: (1) Patent No. 252,280, granted on January 10, 1882, to Curtiss H. Veeder, for a "seat for bicycles;" (2) patent No. 197,289, granted November 20, 1877, to A. L., G. M., and O. E. Peters, for "an anti-friction journal-box;" (3) patents Nos. 235,551 and 245,542, granted December 14, 1880, and August 9, 1881,

respectively, to Thomas W. Moran, for "handles for velocipedes;" (4) patent No. 240,905, granted May 3, 1884, to John Harrington for an "improvement in bicycles;" (5) patent No. 310,776, granted January 13, 1885, to William P. Benham for "improvements in velocipedes;" (6) patent No. 323,162 granted July 28, 1885, to Emmett G. Latta, for an "improvement in velocipedes;" (7) patent No. 329,851, granted November 3, 1885, to Albert H. Overman for an "improvement in pedals for velocipedes." It is charged that the patents now in question have been duly assigned to, and are now the property of, the complainant. The bill asks for an injunction and an accounting for the damages sustained by the alleged infringement. We find no proof in the record showing or attempting to show infringement of the Moran 1880 patent, the Harrington patent, nor the Overman patent, and as complainant's attorneys have not discussed or insisted in their oral or printed arguments that infringement is shown as to these patents, we shall give them no further attention.

The Veeder patent, No. 252,280, is for an improvement in bicycle saddles, or seats for bicycles; and is stated in the specifications to consist specially in "devices for suspending the leather or other flexible material of which the seating surface is composed, and for stretching or taking up the slack in the same, and for connecting the same with the perch or supporting bar for the seat, and by means of which the seat is made adjustable backward and forward over the perch or bar, * * * and consists, *first*, in a divided metallic spring or supporting plate for the flexible seat; *second*, in a modification of that portion of said metallic spring which forms the frame-work for the rear of the seat; *third*, in mechanism for elongating or extending said metallic spring, so as to take up the slack of the flexible seat." The patent contains eight claims, but infringement is specifically charged, and insisted upon, only as to the first and second of these claims, which are as follows:

"(1) A suspension saddle, constructed with a flexible portion, C, and having an under spring in two or more parts, B, D, to which the flexible portion is attached at either end, and which metallic parts are extensible, substantially as and for the purposes set forth. (2) In a velocipede seat, the combination of plates, B and D, clamp, F, stop b, and adjusting bolt, F', substantially as shown and described."

The patent contains a disclaimer as follows:

"I am aware that a spring has been used to support the seat or saddle of a bicyle. I therefore do not claim the general application of a spring for this purpose; but I do claim the improved form of spring as herein described."

The features of this patent now in controversy are especially the curved spring, which is made in two parts, both ends being curved upward, and the parts connected by a clamp, so that the spring is extensible; and, the flexible seat being attached to these curved ends of the spring, the slack of the seat can be taken up by extending the spring.

The Peters patent, No. 197,289, is described in the specifications as "an improvement for overcoming the friction of the bearings of all vehicles mounted on wheels, and the journals of all revolving shafts, cyl-

inders, and bearings of machinery. * * * The invention is a combination of rollers or cylinders made of iron, steel, or any suitable metals or other materials, of sufficient number, and suitable in length, size, and form, which revolve around the spindle or bearing of the axle within the hub of the wheel, and around the journal or bearing of the shaft or cylinder, and within the journal-box, the rollers being independent of the bearing and the hub or journal-box. * * * To support and keep the rollers from running against one another, and thereby producing friction, both ends of each are made with a bearing which goes into rings or their equivalents in such a manner as to allow the rollers to turn freely on their bearings as they revolve around the bearings of the axle or shaft." Provision was made for making the ends of these rollers beveled so that the inside beveled end would bear against a corresponding bevel on the shoulder of the axle; while the outside ends of the rollers would bear upon an adjustible nut secured upon the outer end of the axle, so as to adjust the nut to the rollers as they become shortened at the ends by wear. The patent contains four claims, but infringement is only insisted upon in this case of the second claim, which is as follows:

"(2) The bearings, with the shoulders beveled or notched, combined with the nut, or its equivalent, correspondingly beveled or notched, as shown in Fig. 4."

The Moran patent, No. 245,542, granted August 9, 1881, is for an "improvement in the handles of bicycles and velocipedes," and consists in affixing, by the device shown in the patent, a ball of rubber to the ends of the velocipede handles. The patent contains three claims, as follows:

"(1) The handle o_ a velocipede provided with rubber ends, as set forth. (2) The handle of a velocipede, in combination with rubber tips sleeved upon its ends as set forth. (3) A rubber handle for a velocipede, consisting of a ball and neck, combined in one piece, as set forth."

The Benham patent, No. 310,776, is for an improved handle-bar for velocipedes or bicycles, and consists of a handle-bar in one-piece, extending from the steering-head, and fastened to the steering-head by the peculiar mechanism shown. The patent contains four claims, and infringement is charged as to the first and third, which are:

"(1) The combination of an undivided bar, and an open slotted lug, and two sleeved nuts, or their equivalents, one on either side the lug, surrounding the bar, and adapted to lock it rigidly to the lug, essentially as set forth."
"(3) In combination with the handle-bar, B, the detent, D, constructed and adapted to operate substantially as and for the purposes set forth."

The Latta patent, No. 323,162, relates, in the language of the specifications, to certain improvements in the "construction of the pedals of velocipedes or bicycles, and more particularly to that class of pedals in which a serrated steel bar is combined with the rubber pedal-bar in such manner that the pedal can be changed from a rubber pedal to a serrated or rat-trap pedal, as may be desired. The object of my invention is to combine a pedal bar of this character in a compact form, and in a simple manner, whereby the pedal can be readily changed from a rubber to

a serrated or rat-trap pedal, or a rubber and rat-trap pedal combined, and to so construct the parts whereby the pedal bars are more elastic and yielding to the foot than those now in use, and whereby the bearing surfaces are increased and the weight of the bars are reduced at the same time." The patent contains eight claims, and infringement is charged as to the second and third, which are as follows:

"(2) The combination, with the pedal-frame, of a rubber pedal-bar, H, provided with a central longitudinal groove, h, and two bearing surfaces, h', h', on opposite sides of the groove, h, substantially as set forth. (3) The combination, with a pedal frame, of a rubber pedal-bar, H, pivoted to the frame by a rod, i, and provided on each of its sides with a longitudinal groove, h, and two bearing faces, h', h', on opposite sides of the groove, whereby the bar, H, is adapted to receive the pressure at its sides or edges, and be compressed on opposite sides of the rod, i, substantially as set forth."

The defenses interposed are: (1) That the patents in question are void for want of novelty; (2) that the defendants do not infringe.

Complainant insists that defendants, by certain license contracts made by complainant to the defendant Gormully, dated June 13, 1883, and December 1, 1884, have admitted the validity of each and all the patents involved in this suit, and the title of complainant thereto; that although said licenses are in terms only to defendant Gormully, yet defendant Jeffrey was, in fact, interested in the business of Gormully as an actual partner, and that the defendant the Gormully & Jeffrey Manufacturing Company is a corporation organized and operated only for the convenience of said Gormully and Jeffrey, and that said Gormully and Jeffrey are the sole owners of its stock and managers of its affairs, and that therefore all the defendants in this case are by virtue of said license contracts estopped to deny the validity of said patents, or either of them, or any claim thereof, and are also estopped to deny complainant's title to said patents or either of them. In the preceding case, (No. 824, *ante,* 877,) we fully discussed the character of these licenses, and considered the question as to how far they are binding, and came to the conclusion that these license contracts ceased to operate upon and bind the defendant Gormully after the termination and surrender thereof; and as the same proofs in regard to the validity of the said contracts are before us in this case, we again say that our conclusion is that the defendant Gormully accepted said license contracts with the mistaken belief and understanding that they terminated and became wholly inoperative on the 1st day of April, 1886, and that thenceforward all his relations with and obligations to complainant by virtue of said license contracts ceased and were at an end, and hence that it would be inequitable to enforce said license contracts against Gormully, the licensee, after such termination; and, as the defendants Jeffrey and the Gormully & Jeffrey Manufacturing Company, by complainant's own showing, were only bound by these contracts through Gormully, they are not estopped to contest the validity of these patents any more than Gormully himself is so bound. We therefore turn to the consideration of the issues made upon the patents themselves.

In regard to the Veeder patent, there can be no doubt, we think, that it was intended to contain not only the idea of a suspension saddle by the suspension of some flexible material, like leather or cloth, but also the idea of extensibility, so that, by extending the bearings or suspension points of the saddle as the seat material became stretched or slacked, the slack might be taken up; and this element of extensibility was obtained by Veeder through his peculiar extensible springs, or his double spring, if it may be so called, coupled together in the center, and capable of being elongated or extended. The proof shows that the idea of a suspension saddle was not new with Veeder; and, without discussing all the patents cited by the defendants as anticipatory of the Veeder device, it is sufficient to say that in the English patent of Lamplugh and Brown, of July, 1878, an extension seat is shown in at least three different forms; the spring upon which the rear end of the seat is suspended being movable, so that the principle of extensibility is clearly shown in this patent. So in the Shire patent of May 26, 1879, a suspension seat is shown with facilities for extending or taking up the slack, and the same feature is shown in the Fowler patent of May, 1880, and the later Fowler patent of October, 1881. Finding, therefore, that the principles of suspension and extensibility are both old in the art, the only inquiry left is whether the defendant uses the peculiar extensible spring shown by the Veeder patent; and a simple inspection of the defendants' saddle shows that, while it may be said to contain the feature of suspension and extensibility by means of certain devices whereby it is connected with and held to the backbone of the bicycle, or seat of the tricycle, yet it does not contain the spring shown in the Veeder patent; and as the Veeder patent must be restricted by the disclaimer to the form of spring shown in that patent, and as suspended saddles were old before Veeder, it is sufficient to say that the defendants do not use that form of spring, and hence do not infringe the Veeder patent.

Neither the complainant nor the defendants use the Peters patent as it is shown and described in the specifications,—that is, they do not use it with roller-bearings, as described and shown in the specifications and drawings,—but the contention on the part of the complainant is that this patent is the germ, so to speak, of all the ball-bearing devices which have a provision for lateral adjustment to compensate for the wear, and that the beveled rollers shown in that patent are but another form of ball or globular bearings, and that Peters was the first to show a means of laterally adjusting these bearings, whether the bearing was in the form of a roller or a ball. The defendants' machines have ball-bearings in the main wheel, the rear wheel, and the treadles, the balls being held in grooves or channels, and there being in all their journal-boxes an arrangement for lateral adjustment; but defendants contend that devices for lateral adjustment of these bearings were old long before the Peters patent, and the proof shows that in 1853 one Chinnock received a patent in England on a ball-bearing which had provision for a lateral adjustment by means of a beveled nut, while the American patent to Alcott, in 1870, shows the same feature of adjustability, and by substantially the same

mechanism, for a roller-bearing. The American patent to Jewett & Leach, granted in 1868, also exhibits the same feature of lateral adjustability. We also find that the American patents to Ruse and Vernon, both granted in 1872, which, while not for roller or ball bearings, show beveled bearings with beveled nuts for endwise or lateral adjustment. These are only a few of the many proofs in the record of devices for lateral adjustment well and publicly known in the art long prior to the advent of this Peters patent. The Alcott patent was for a roller-bearing like Peters', with the ends of the rollers beveled, so as to fit into a V-shaped channel or groove; this groove being what may be termed a double bevel,—that is, there was a beveled bearing over the ends of the rollers as well as under them,—while Peters only had a bevel under his roller ends; but the principle of the Peters bevels is all shown in this Jewett & Leach patent, including the special arrangement and directions for obtaining the endwise or lateral adjustment. Indeed, we can say from common knowledge that it was old long before the Peters patent was granted to secure endwise or lateral adjustment to take up the end wear upon the common wagon and buggy axle by means of a nut and screw, and the fact that the Peters rollers were beveled cuts no figure in this matter of lateral adjustment. A plain screw-nut being old to take up the end wear of an ordinary carriage or buggy axle, we doubt if it required invention to apply it to a beveled roller like Alcott or Peters, when endwise adjustment to beveled rollers was found desirable. We therefore conclude that there was no novelty in the Peters mode of lateral adjustment covered by his second claim. But, if we had any doubt on the question of novelty, we are clear that the defendants do not infringe this claim, as, in the state of the art, this feature of the Peters patent must be strictly confined to the special devices shown,—that is, to a beveled nut for the adjustment of beveled rollers,—and cannot be held to cover a lateral adjustment for ball-bearings by means of a nut, which was old and well known when Peters came into the field. Without, therefore, discussing in detail all the patents and devices shown in this record, which it is claimed anticipate the Peters patent when it is converted into a ball-bearing device, if such conversion is deemed allowable, we certainly find in the evidence several much older devices as readily susceptible of such conversion as the Peters, and hence must hold that the defendants, by the use of their adjustable ball-bearing device, do not infringe the Peters patent.

The Moran patent, No. 245,542, granted August 9, 1881, is, as already stated, for fixing a rubber ball to the ends of the handle of the velocipede. If it can be conceived that there is any patentability, or was any, in August, 1881, in fixing soft rubber, or any soft and flexible material, to the ends of a velocipede handle for the purpose of preventing it from wearing the hands, or taking off the jar of the machine, certainly, that idea is fully anticipated in the English patent of Harrison of July, 1877; and this Moran patent, in its entire scope and means of applying the rubber to the handle, seems to contain nothing new, and nothing which is not shown in the Harrison patent. In his provisional specifications Harrison says:

"The fourth part of my invention consists of a sheath or glove of india rubber, cloth, or any other soft material to fit closely, partly or entirely covering the handles of bicycles or tricycles, which may be filled with air. This is to obviate sore hands, to give greater comfort, especially in long journeys, to the hands, which lessens the vibration, and is softer to the hand-grip, and also lessens the concussion in case of the bicycle falling upon the handles. The probability of bent handle-bars and roughed hands is lessened thereby."

Harrison gives no specific directions as to how his rubber ball, or rubber sleeve, is to be fastened upon the handles, and, of course, any device for that purpose was open to him. It may be that the peculiar method described in Moran's patent of fastening the rubber to the handle involves patentability; but even if that be so, the defendants do not use that exact method, and it is doubtful whether in any of the claims of the Moran patent these particular modes of fastening the rubber to the handles are specifically included. We must therefore find that the broad claim set up by the complainant for the scope of this Moran patent cannot be sustained; and if the patent can be sustained at all, it is only for the specific devices which the defendants do not use.

As to the Benham patent, No. 310,776, granted January 13, 1885, the only feature which it covers is the idea of an undivided handle-bar, and the means by which this bar is fastened to the steering-head. Undoubtedly the idea of a continuous or undivided steering-bar is as old as the attempt to steer ships by a steering bar fastened to the rudder-post, and ropes or chains leading to the wheel, or the old-fashioned auger-handle by which the auger is turned in use. There may be some novelty in the means by which Benham locked his handle-bar to the steering-head so as to make the same easily removable, and at the same time give a firm fastening; but, if there was any patentable novelty in the device, it is certainly not infringed by the defendants, who, while they use an undivided handle-bar, have adopted a different method for fastening the same to the steering-head, and do not use either the complainant's open slotted lug and two-sleeved nuts, or their detent.

As to the Latta patent, the feature covered by the second and third claims, which the defendants are charged with infringing, is the pedal-bar coated with rubber longitudinally grooved so as to furnish two bearing surfaces on opposite sides of the groove. The proof shows that pedal-bars coated with rubber were old long before the date of this patent, and that such pedal-bars had been grooved longitudinally. Pedal-bars with rubber surfaces are shown in the English patent to Jackson, of January, 1876. They are also shown in the Harrison patent of July, 1877. The latter patent shows round pedal-bars coated with rubber, and grooved longitudinally; and it certainly seems almost a libel upon inventive talent, after a round grooved pedal-bar had been shown, to claim that there is any invention in changing the form to a polygonal-shaped bar with grooved surfaces.

The view which we take of all these patents, when considered upon their merits in the light of the prior art, compels us, therefore, to dismiss this bill for want of equity.